1

2

3

4

5

6

7
## UNITED STATES DISTRICT COURT

8
## FOR THE CENTRAL DISTRICT OF CALIFORNIA

9

10
MIDFIRST BANK, a federally
      chartered savings association,

11
            Plaintiff,

12
      v.

13
UPGO, INC., a corporation,
SUN JOO KIM, an individual,

14
RETRIEVO, INC., a corporation,
EDWARD HONG, an individual,

15
TERRAMOR ENTERPRISES INC., a
      corporation,

16
BYUNG WOO CHOI, an individual,
MEDICAL BENEFITS INC., a

17
      corporation,
KIYONG JEONG, an individual,

18
ZODIAK, INC., a corporation,
KRIS PARK, an individual,

19
INSUK WORLDWIDE CORP., a
      corporation,

20
TAE MYUNG EOM, an individual,
DURUSTECH, INC., a corporation,

21
WOO YOUNG JANG, an individual,
VITAPRO, INC., a corporation,

22
HYEJIN LEE, an individual,
JUNGWOO INC., a corporation,

23
SUN OK YUN, an individual,
ZEBRA COMMERCE, INC., a

24
      corporation,
BYUNGIK DAVID OH, an individual,

25
      and
YEON YI aka YUNA LEE, an

26
      individual,

27
            Defendants.

28

Case No. 8:23-cv-02170-JWH-DFMx

**ORDER GRANTING MOTION OF DEFENDANTS OH AND ZEBRA COMMERCE TO SET ASIDE DEFAULT [ECF No. 80], GRANTING MOTION OF DEFENDANT YI TO SET ASIDE DEFAULT [ECF No. 86], AND GRANTING IN PART PLAINTIFF'S APPLICATION FOR DEFAULT JUDGMENT [ECF No. 75]**

Before the Court are three matters:

- the motion of Defendants Byungik David Oh and Zebra Commerce, Inc. to set aside the Clerk's entry of default against them;[1]

- the motion of Defendant Yeon Yi, aka Yuna Lee, to set aside the Clerk's entry of default judgment against her;[2] and

- the application of Plaintiff MidFirst Bank for default judgment against Defendants Sun Joo Kim; Retrievo, Inc.; Edward Hong; Medical Benefits Inc.; Kiyong Jeong; Kris Park; Insuk Worldwide Corp.; Tae Myung Eom; Woo Young Jang; Vitapro, Inc.; Hyejin Lee; Sun Ok Yun; Zebra Commerce, Inc.; Byungik David Oh; and Yeon Yi.[3]

The Court concludes that these matters are appropriate for resolution without a hearing. *See* Fed. R. Civ. P. 78; L.R. 7-15. After considering the documents of record in this action, including the papers filed in support of and in opposition to the pending matters, the Court **GRANTS** the Oh Motion, **GRANTS** the Yi Motion, and **GRANTS in part** MidFirst's Application.

## I. BACKGROUND

### A. Factual Allegations

MidFirst filed the Complaint in this action in November 2023.[4] It asserts seven claims for relief:

- fraud;

- violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961 *et seq*;

- negligent misrepresentation;

---

[1]    Defs.' Mot. to Set Aside Default (the "Oh Motion") [ECF No. 80].

[2]    Def.'s Mot. to Set Aside Default (the "Yi Motion") [ECF No. 86].

[3]    Pl.'s App. for Default J. (the "Application") [ECF No. 75].

[4]    *See generally id.*

- breach of contract;
- foreclosure of collateral;
- tortious interference with contract; and
- violations of Cal. Bus. & Prof. Code § 17200.[5]

### 1. Defendants' Activities Giving Rise to Liability

#### a. Yeon Yi

Specifically, MidFirst alleges that, beginning in October 2021, Defendant Yeon Yi referred all of the other Defendants—which are 10 pairs of businesses and individual owners—to 1st Century Bank, which is an unincorporated division of MidFirst, as part of a scheme to defraud MidFirst.[6] As part of that scheme, between October 2021 and November 2022, Defendants coordinated to "appl[y] for and secure[] substantial business lines of credit from MidFirst" by submitting 10 pairs of fraudulent and false applications.[7] In each of those fraudulent applications, Defendants took advantage of MidFirst's small-business loan program by falsely asserting that Defendants were first-time business owners with low sales revenue.[8]

#### b. Upgo/Kim

MidFirst alleges that, in September 2021, Upgo and Kim applied for a line of business credit.[9] Kim made various misrepresentations in that application, including misrepresentations about the ownership of Upgo and whether Kim owned other businesses, with the intent to mislead MidFirst and to obtain a loan

---

[5]    Compl. (the "Complaint") [ECF No. 1].

[6]    *Id.* at ¶ 34.

[7]    *Id.* at ¶¶ 34 & 35.

[8]    *Id.* at ¶¶ 32 & 33.

[9]    *Id.* at ¶ 43.

that Kim and Upgo were not qualified to receive.[10]  Relying on Kim's
misrepresentations, MidFirst agreed to loan Upgo $400,000, and Kim
guaranteed that loan.[11]  Upgo and Kim did not use the loan to support Upgo's
business; instead, Kim transferred the funds to Kim's other businesses.[12]

### c.    Retrievo/Hong

In March 2022, Retrievo and Hong also applied for a line of business
credit.[13]  Hong made various misrepresentations in that application, including
misrepresentations about the ownership of Retrievo and whether Hong owned
other businesses, with the intent to mislead MidFirst and to obtain a loan that
Retrievo and Hong were not qualified to receive.[14]  Relying on Hong's
misrepresentations, MidFirst agreed to loan Retrievo $400,000, and Hong
guaranteed that loan.[15]  Retrievo and Hong did not use the loan to support
Retrievo's business; instead, Hong transferred the funds to Hong's other
businesses.[16]

### d.    Terramor/Choi

In March 2022, Terramor and Choi applied for a line of business credit.[17]
Choi made various misrepresentations in that application, including
misrepresentations about the ownership of Terramor and whether Choi owned
other businesses, with the intent to mislead MidFirst and to obtain a loan that

---

[10]    *Id.*

[11]    *Id.*

[12]    *Id.*

[13]    *Id.* at ¶ 48.

[14]    *Id.*

[15]    *Id.*

[16]    *Id.*

[17]    *Id.* at ¶ 53.

Terramor and Choi were not qualified to receive.[18]  Relying on Choi's
misrepresentations, MidFirst agreed to loan Terramor $101,894.86, and Choi
guaranteed that loan.[19]  Terramor and Choi did not use the loan to support
Terramor's business; instead, Choi transferred the funds to Choi's other
businesses.[20]

### e.    Medical Benefits/Jeong

In April 2022, Medical Benefits and Jeong applied for a line of business
credit.[21]  Jeong made various misrepresentations in that application, including
misrepresentations about the ownership of Medical Benefits and whether Jeong
owned other businesses, with the intent to mislead MidFirst and to obtain a loan
that Jeong and Medical Benefits were not qualified to receive.[22]  Relying on
Jeong's misrepresentations, MidFirst loaned Medical Benefits $253,123.86, and
Jeong guaranteed that loan.[23]  Medical Benefits and Jeong did not use the loan to
support Medical Benefits' business; instead, Jeong transferred the funds to
Jeong's other businesses.[24]

### f.    Zodiak/Park

In April 2022, Zodiak and Park applied for a line of business credit.[25]  Park
made various misrepresentations in that application, including
misrepresentations about the ownership of Zodiak and whether Park owned

---

[18]    *Id.*

[19]    *Id.*

[20]    *Id.*

[21]    *Id.* at ¶ 58.

[22]    *Id.*

[23]    *Id.*

[24]    *Id.*

[25]    *Id.* at ¶ 63.

other businesses, with the intent to mislead MidFirst and to obtain a loan that
Park and Zodiak were not qualified to receive.[26]  Relying on Park's
misrepresentations, MidFirst agreed to loan Zodiak $399,623.86, and Park
guaranteed that loan.[27]  Zodiak and Park did not use the loan to support Zodiak's
business; instead, Park transferred the funds to Park's other businesses.[28]

### g.    Insuk/Eom

In June 2022, Insuk and Eom applied for a line of business credit.[29]  Eom
made various misrepresentations in that application, including
misrepresentations about the ownership of Insuk and whether Eom owned other
businesses, with the intent to mislead MidFirst and to obtain a loan that Insuk
and Eom were not qualified to receive.[30]  Relying on Eom's misrepresentations,
MidFirst agreed to loan Insuk $281,623.86, and Eom guaranteed that loan.[31]
Insuk and Eom did not use the loan to support Insuk's business; instead, Eom
transferred the funds to Eom's other businesses.[32]

### h.    Durustech/Jang

In August 2022, Durustech and Jang applied for a line of business credit.[33]
Jang made various misrepresentations in that application, including
misrepresentations about the ownership of Durustech and whether Jang owned
other businesses, with the intent to mislead MidFirst and to obtain a loan that

---

[26]    *Id.*

[27]    *Id.*

[28]    *Id.*

[29]    *Id.* at ¶ 68.

[30]    *Id.*

[31]    *Id.*

[32]    *Id.*

[33]    *Id.* at ¶ 73.

Durustech and Jang were not qualified to receive.[34]  Relying on Jang's

misrepresentations, MidFirst agreed to loan Durustech $399,623.86, and Jang

guaranteed that loan.[35]  Durustech and Jang did not use the loan to support

Durustech's business; instead, Jang transferred the funds to other businesses.[36]

### i.    Vitapro/Lee

In September 2022, Vitapro and Lee applied for a line of business credit.[37]

Lee made various misrepresentations in that application, including

misrepresentations about the ownership of Vitapro and whether Lee owned

other businesses, with the intent to mislead MidFirst and to obtain a loan that

Vitapro and Lee were not qualified to receive.[38]  Relying on Lee's

misrepresentations, MidFirst agreed to loan Vitapro $399,623.86, and Lee

guaranteed that loan.[39]  Vitapro and Lee did not use the loan to support

Vitapro's business; instead, Lee transferred the funds to Lee's other

businesses.[40]

### j.    Jungwoo/Yun

In September 2022, Jungwoo and Yun applied for a line of business

credit.[41]  Yun made various misrepresentations in that application, including

misrepresentations about the ownership of Jungwoo and whether Yun owned

other businesses, with the intent to mislead MidFirst and to obtain a loan that

---

[34]    *Id.*

[35]    *Id.*

[36]    *Id.*

[37]    *Id.* at ¶ 78.

[38]    *Id.*

[39]    *Id.*

[40]    *Id.*

[41]    *Id.* at ¶ 83.

1  Jungwoo and Yun were not qualified to receive.[42]  Relying on Yun's

2  misrepresentations, MidFirst agreed to loan Jungwoo $400,000, and Yun

3  guaranteed that loan.[43]  Jungwoo and Yun did not use the loan to support

4  Jungwoo's business; instead, Yun transferred the funds to Yun's other

5  businesses.[44]

6              **k.    Zebra Commerce/Oh**

7         In November 2022, Zebra Commerce and Oh applied for a line of

8  business credit.[45]  Oh made various misrepresentations in that application,

9  including misrepresentations about the ownership of Zebra Commerce and

10  whether Oh had ever filed a bankruptcy petition, with the intent to mislead

11  MidFirst and to obtain a loan that Zebra Commerce and Oh were not qualified

12  to receive.[46]  Relying on Oh's misrepresentations, MidFirst agreed to loan Zebra

13  Commerce $400,000, and Oh guaranteed that loan.[47]  Zebra Commerce and Oh

14  did not use the loan to support Zebra Commerce's business; instead, Oh

15  transferred the funds to Oh's other businesses.[48]

16              **2.    MidFirst's Response**

17         MidFirst contends that it discovered Defendants' pattern of

18  misrepresentations in May 2023.[49]  MidFirst transmitted to Defendants notices

19  of default and informed Defendants that MidFirst intended to "accelerate"

20

---

21  [42]    *Id.*

22  [43]    *Id.*

23  [44]    *Id.*

24  [45]    *Id.* at ¶ 88.

25  [46]    *Id.*

26  [47]    *Id.*; *see also* Complaint, Ex. 28 [ECF No. 1-1].

27  [48]    Complaint ¶ 88.

28  [49]    *Id.* at ¶ 37.

Defendants' repayment obligations.[50]  Choi responded to the notice; all other

Defendants ignored the notice.[51]  In June 2023, MidFirst transmitted another

notice to each Defendant.  When no Defendant responded, MidFirst sent a third

notice.[52]  Defendants' failure to respond or pay the balance due on the loans

constituted a breach of Defendants' promissory notes, commercial security

agreements, and commercial guaranty agreements.

**B.    Procedural History**

In December 2023, MidFirst filed Proofs of Service with respect to Oh,

Hong, Lee, Insuk Woldwide, Retrievo, Eom, Vitapro, Yi, and Zebra

Commerce.[53]  MidFirst then requested the entry of default against all of those

Defendants.[54]  The Clerk complied.[55]  In January 2024, MidFirst filed Proofs of

Service for Medical Benefits and Jeong.[56]  MidFirst then requested the entry of

default against Medical Benefits and Jeong,[57] and the Clerk complied.[58]

In January 2024, Kim, Hong, Jeong, Park, Eom, Jang, Lee, Oh, Yun, and

Yi filed an Answer to the Complaint.[59]  MidFirst moved to strike that Answer as

---

[50]    *Id.*

[51]    *Id.* at ¶ 38.

[52]    *Id.* at ¶¶ 38 & 39.

[53]    Proofs of Service [ECF Nos. 10–18].

[54]    *See* Reqs. for Clerk to Enter Default [ECF Nos. 19–25, 34, & 35];
Renewed Req. for Clerk to Enter Default [ECF No. 32].

[55]    *See* Defaults by Clerk [ECF Nos. 26–30, 33, 38, & 39].

[56]    Proof of Service [ECF Nos. 36 & 37].

[57]    *See* Reqs. for Default [ECF Nos. 40 & 41].

[58]    *See* Default by Clerk [ECF No. 43].

[59]    *See* Answer to Compl. (the "Answer") [ECF No. 44].

1    to Oh, Lee, Hong, Eom, Jeong, and Yi because the Clerk had entered default

2    against those Defendants.  In March 2024, the Court granted that motion.[60]

3          In March 2024, counsel for Defendants Eom, Hong, Jang, Jeong, Kim,

4    Lee, Oh, Park, Yi, and Yun moved to withdraw.[61]  MidFirst objected to that

5    Motion to Withdraw and filed a motion for judgment on the pleadings or, in the

6    alternative, to strike the Answer with respect to all remaining Defendants.[62]

7    The Court conducted a hearing on both Motions in June 2024, during which it

8    granted the Motion to Withdraw and struck the pleadings of Defendants Kim,

9    Park, Jang, and Yun.[63]  The Court ordered those Defendants to file new

10    responses to the Complaint by July 12, 2024.[64]  The Court also ordered

11    Defendants Hong, Jeong, Eom, Lee, Oh, and Yi—all of whom were in default—

12    to file motions to vacate default by that same date.[65]

13          Defendants did not file motions to vacate default, nor did they respond to

14    the Complaint by the deadline.  Accordingly, in August 2024, MidFirst

15    requested the entry of default against Jang, Kim, Park, and Yun.[66]  The Clerk

16    entered default against those Defendants on August 20, 2024,[67] and, a few days

17    later, MidFirst voluntarily dismissed all of the defendants who were not in

18

19   [60]     *See* Min. Order re Hr'g re Pl.'s Mot. to Strike Answer [ECF No. 50] ¶ 2.

20   [61]     *See* Mot. to Be Relieved as Counsel (the "<u>Motion to Withdraw</u>") [ECF

21   No. 55].

22   [62]     Mot. for J. on the Pleadings or to Strike (the "<u>Motion for Judgment on the</u>
<u>Pleadings</u>") [ECF No. 57].

23   [63]     *See* Min. Order re Hr'g re the Motion to Withdraw [ECF No. 61] ¶¶ 2 &

24   3.

25   [64]     *Id.*

26   [65]     *Id.* at ¶ 5.

27   [66]     Req. for Default [ECF No. 70].

28   [67]     *See* Default by Clerk [ECF No. 72].

1  default—Upgo, Terramor, Choi, Zodiak, Drustech, and Jungwood.[68]  MidFirst

2  filed the instant Application against the remaining defaulted Defendants on

3  August 23, 2024.[69]

4      Through its instant Application, MidFirst seeks a default judgment

5  against each of the defaulted Defendants—Kim, Retrievo, Hong, Medical

6  Benefits, Jeong, Park, Insuk, Eom, Jang, Vitapro, Lee, Yun, Zebra Commerce,

7  Oh, and Yi—in the amount of $10,362,178.77.[70]  MidFirst also seeks an award of

8  attorneys' fees and costs.[71]  In February and June 2025, however, Oh, Zebra

9  Commerce, and Yi filed their instant Motions to set aside the entry of default.[72]

10                    **II.  LEGAL STANDARD**

11  **A.    Motion to Set Aside Default**

12      The Federal Rules of Civil Procedure provide that a "court may set aside

13  an entry of default for good cause . . . ."  Fed. R. Civ. P. 55(c).  "The district

14  court has discretion to determine whether a party demonstrates 'good cause.'"

15  *Yan v. Gen. Pot, Inc.*, 78 F. Supp. 3d 997, 1003 (N.D. Cal. 2015) (quoting *Madsen*

16  *v. Bumb*, 419 F.2d 4, 6 (9th Cir. 1969)).  That discretion "is particularly broad

17  where a party seeks to set aside an entry of default rather than a default

18  judgment."  *Id.* at 1004 (citing *Mendoza v. Wight Vineyard Mgmt.*, 783 F.2d 941,

19  944-45 (9th Cir. 1986)).

20      To determine whether good cause exists, a district court must first

21  determine—as a threshold matter—whether the moving defendant was properly

22  served.  *See Haynes v. Bank of Am.*, 2009 WL 10680849, at *1 (C.D. Cal. Aug. 5,

23

---

24  [68]    *See* Notice of Dismissal [ECF No. 74].

25  [69]    *See* Application.

26  [70]    *Id.* at 6:23–26.

27  [71]    *See id.* at 7:7.

28  [72]    *See* Oh Motion; Yi Motion.

2009) (citing *Mitchell v. Los Angeles Cmty. Coll. Dist.*, 861 F.2d 198, 202 (9th Cir. 1988)). If service was proper, the district court must then consider three factors: "(1) whether the defendant's culpable conduct led to the default; (2) whether the defendant has a meritorious defense; and (3) whether setting aside the default would prejudice the plaintiff." *Yan*, 78 F. Supp. 3d at 1004. That "standard . . . is disjunctive, such that a finding that any one of these factors is true is sufficient reason for the district court to refuse to set aside the default." *United States v. Signed Pers. Check No. 730 of Yubran S. Mesle*, 615 F.3d 1085, 1091 (9th Cir. 2010). At the same time, "judgment by default is a drastic step appropriate only in extreme circumstances; a case should, whenever possible, be decided on the merits." *Id.* (quotation and citations omitted).

## B.    Motion for Default Judgment

"When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a). "If the plaintiff's claim is for a sum certain or a sum that can be made certain by computation, the clerk—on the plaintiff's request, with an affidavit showing the amount due—must enter judgment for that amount and costs against a defendant who has been defaulted for not appearing and who is neither a minor nor an incompetent person." Fed. R. Civ. P. 55(b)(1). "In all other cases, the party must apply to the court for a default judgment." Fed. R. Civ. P. 55(b)(2).

This Court's Local Rules require an applicant for default judgment also to file a declaration that conforms with the requirements of Rule 55(b) and that includes the following information:

(a) When and against which party the default was entered;

(b) The identification of the pleading to which default was entered;

1    (c) Whether the defaulting party is an infant or incompetent person,

2    and if so, whether that person is represented by a general guardian,

3    committee, conservator or other representative;

4    (d) That the Servicemembers Civil Relief Act (50 U.S.C. App.

5    § 521) does not apply; and

6    (e) That notice of the application has been served on the defaulting

7    party, if required by F[ed.] R. Civ. P. 55(b)(2).

8    L.R. 55-1.

9    If the applicant meets the procedural requirements, then "[g]ranting or

10   denying a motion for default judgment is a matter within the court's discretion."

11   *Landstar Ranger, Inc. v. Parth Enterprises, Inc.*, 725 F. Supp. 2d 916, 919 (C.D.

12   Cal. 2010) (internal quotation omitted).  In exercising its discretion, a court may

13   consider the following factors:

14   (1) the possibility of prejudice to the plaintiff, (2) the merits of

15   plaintiff's substantive claim, (3) the sufficiency of the complaint,

16   (4) the sum of money at stake in the action; (5) the possibility of a

17   dispute concerning material facts; (6) whether the default was due to

18   excusable neglect, and (7) the strong policy underlying the Federal

19   Rules of Civil Procedure favoring decisions on the merits.

20   *Eitel v. McCool*, 782 F.2d 1470, 1471–72 (9th Cir. 1986) (the "*Eitel* factors").

21   "Once a party's default has been entered, the factual allegations of the

22   complaint, except those concerning damages, are deemed to have been admitted

23   by the non-responding party." *Landstar*, 725 F. Supp. 2d at 920.  "The court,

24   however, must still consider whether the unchallenged facts constitute a

25   legitimate cause of action, since a party in default does not admit mere

26   conclusions of law." *Id.* (internal quotation omitted).  "If the court determines

27   that the allegations in the complaint are sufficient to establish liability, it must

28

-13-

1  then determine the amount and character of the relief that should be awarded."
2  *Id.* (internal quotation omitted).

3      "Plaintiffs are required to prove all damages sought in the complaint, and
4  such damages 'shall not be different in kind from, or exceed in amount, what is
5  demanded in the pleadings.'" *Espresso Republic, LLC v. Coffee*, 2016 WL
6  7176564, at *2 (C.D. Cal. Dec. 7, 2016) (quoting Fed. R. Civ. P. 54(c)).
7  "'Plaintiff's burden in "proving up" damages is relatively lenient,'" but
8  "sufficient facts, necessary to determine damages, must be provided to the
9  court." *Id.* (quoting *Philip Morris USA, Inc. v. Castworld Prods., Inc.*, 219 F.R.D.
10  494, 498 (C.D. Cal. 2003)).  "If the amount claimed in a judgment by default is
11  unliquidated, the applicant may submit evidence of the amount of damages by
12  declarations." L.R. 55-2.  "Notice must be given to the defaulting party of the
13  amount requested." *Id.*

14                    **III.  ANALYSIS**

15  **A.    The Oh Motion to Set Aside Default**

16      Oh argues that the entry of default should be set aside because he made a
17  good faith effort to respond to this action after he received service of the
18  summons in November 2023.[73]  Specifically, Oh asserts that he contacted a
19  friend in the legal field, who assured Oh that an answer had been filed on behalf
20  of Oh and that the case was being resolved.[74]  In reality, Oh's friend hired or
21  contacted another attorney, who filed an answer on Oh's behalf after default had
22  already been entered against Oh.[75]  Neither Oh's friend nor the third-party
23  lawyer provided Oh with any notice of those actions, and Oh remained unaware
24
25
_____
26  [73]      *See generally* Oh Motion.
27  [74]      *See id.* at 3:7–11.
28  [75]      *See id.* at 3:11–14.

1    of the procedural posture of this case until he consulted with his current counsel

2    in January 2025.[76]

3          MidFirst disputes whether Oh's account is accurate, and it urges the

4    Court to deny the Oh Motion because Oh's claims are "simply not credible."[77]

5    But Oh has submitted a sworn declaration that, in view of the significant

6    potential judgment in this case, the Court is not inclined to disregard.[78]  Oh also

7    intends to raise potentially meritorious defenses, including by disputing whether

8    he in fact submitted any false information or made material misrepresentations

9    in connection with his application for a line of business credit.[79]

10          Accordingly, the Oh Motion is **GRANTED**.

11   **B.    The Yi Motion to Set Aside Default**

12          Yi argues that the entry of default should be set aside because she made a

13   good faith effort to respond to this action after she received service of the

14   summons in November 2023.[80]  Specifically, Yi asserts that she contacted her

15   boss—Oh—who assured Yi that an Answer was filed on behalf of Yi and that

16   she would be assisted in defending the claims in this case.[81]  Yi only recently

17   learned that after an Answer was filed on her behalf in January 2024, the Court

18   struck that pleading in March 2024.[82]  Additionally, Yi's counsel—attorney

19   Jamie Kim—filed a motion to withdraw as counsel of record for Yi in March

20

21   _____

22   [76]      *See id.* at 3:14-17.

     [77]      *See* Pl.'s Opp'n to the Oh Motion [ECF No. 83] 13:17.

23   [78]      *See* Decl. of Byungik David Oh in Supp. of the Oh Motion [ECF

24   No. 80-1].

25   [79]      *See* Oh Motion 8:8–26.

26   [80]      *See generally* Yi Motion.

27   [81]      *See id.* at 3:12–16.

28   [82]      *See id.* at 5:14–18.

2024, which the Court granted in June 2024.[83]  Only then, after Yi obtained new
representation in June 2024, did Yi learn that she was in default and that she had
a motion for default judgment filed against her.[84]

MidFirst disputes whether Yi's account is accurate, and it again urges the
Court to deny the Yi Motion because Yi's "story is not credible."[85]  But Yi has
submitted a sworn declaration that again, in view of the significant potential
judgment in this case, the Court is not inclined to disregard.[86]  Yi also intends to
raise potentially meritorious defenses, including that there was no conspiracy
and that she was simply a translator.[87]

Accordingly, the Yi Motion is **GRANTED**.

## C.    MidFirst Bank's Application for Default Judgment

### 1.    Procedural Requirements

MidFirst satisfied the procedural requirements for the entry of default
judgment by the Court.  Pursuant to Rule 55, MidFirst did not petition for the
entry of default judgment until after default was entered against Defendants by

---

[83]      *Id.* at 5:19–21.

[84]      *Id.* at 5:24–26.

[85]      *See* Pl.'s Opp'n to the Yi Motion [ECF No. 87] 8:2.

[86]      *See* Decl. of Yeon Yi aka Yuna Lee in Supp. of the Yi Motion [ECF
No. 86-1].

[87]      *See* Yi Motion 7:17–22.

1  the Clerk.[88]  Additionally, MidFirst provided all of the information required by

2  the Local Rules of this Court.[89]

3       **2.    The *Eitel* Factors**

4       Under the circumstances of this case, the *Eitel* factors collectively weigh

5  in favor of awarding default judgment.

6            **a.    Possibility of Prejudice to MidFirst**

7       The first *Eitel* factor considers whether the plaintiff will be prejudiced if

8  default is not entered.  If the Application is not granted, then, in view of

9  Defendants' failure to appear, to answer the Complaint, or to move to set aside

10  the entries of default against them, MidFirst "will likely be without other

11  recourse for recovery."  *PepsiCo, Inc. v. California Sec. Cans*, 238 F. Supp. 2d

12  1172, 1177 (C.D. Cal. 2002).  This factor therefore weighs in favor of granting

13  the Application.

14            **b.    Merits of MidFirst's Claims and Sufficiency of**

15                 **Complaint**

16       The second and third *Eitel* factors assess the merits of the plaintiff's

17  substantive claim and the sufficiency of the complaint.  Those factors require the

18  plaintiff to state a claim upon which it may recover.  *See, e.g.*, *Danning v. Lavine*,

19  572 F.2d 1386, 1388 (9th Cir. 1978).

20       Here, MidFirst has alleged sufficient facts to state claims on which

21  MidFirst may recover.  To start, MidFirst has plausibly alleged that Defendants

22  
---

23  [88]    *Compare* Defaults by Clerk [ECF Nos. 26–30] (entered December 20,
   2023), Default by Clerk [ECF No. 33] (entered December 28, 2023), Defaults by
24  Clerk [ECF Nos. 38 & 39] (entered January 4, 2024), Default by Clerk [ECF
   No. 43] (entered January 8, 2024), Default by Clerk [ECF No. 62] (entered
25  June 24, 2024), & Default by Clerk [ECF No. 72] (entered August 20, 2024)
26  *with* Application (filed August 23, 2024).

27  [89]    *See* Reqs. for Clerk to Enter Default [ECF Nos. 19–25, 32, 34–35, 40–42,
28  & 70].

1  committed fraud.  To state a claim for fraud, MidFirst must allege
2  "(a) misrepresentation (false representation, concealment, or nondisclosure);
3  (b) knowledge of falsity (or 'scienter'); (c) intent to defraud, *i.e.*, to induce
4  reliance; (d) justifiable reliance; and (e) resulting damage." *Lazar v. Super. Ct.*,
5  12 Cal. 4th 361, 638 (1996).  "Each element must be alleged with particularity."
6  *Beckwith v. Dahl*, 205 Cal. App. 4th 1039, 1060 (2012).

7       Here, MidFirst has plausibly alleged that Defendants intentionally
8  provided false and misleading information in connection with loan applications
9  and that, as a result, Defendants obtained over $3 million in business loans.[90]
10  MidFirst has also provided the specific misrepresentations that each Defendant
11  made, as well as the time that those misrepresentations were made and the
12  circumstances surrounding the misrepresentations.[91]  MidFirst has also plausibly
13  alleged that Defendants intended that MidFirst would rely on the
14  misrepresentations and that MidFirst was harmed by Defendants' conduct.[92]

15       Next, MidFirst has pleaded sufficient facts to state a claim for civil RICO
16  violations.  To assert a RICO claim, a "plaintiff must show (1) that his alleged
17  harm qualifies as injury to his business or property; and (2) that his harm was
18  'by reason of' the RICO violation." *Canyon County v. Syngenta Seeds, Inc.*, 519
19  F.3d 969, 972 (9th Cir. 2008).  The plaintiff must also "prove that the defendant
20  engaged in (1) conduct (2) of an enterprise (3) through a pattern (4) of
21  racketeering activity." *Painters & Allied Trades Dist. Council 82 Health Care*
22  *Fund v. Takeda Pharmaceuticals Co. Ltd.*, 1251 n.7 (9th Cir. 2019).  As discussed
23  above, MidFirst plausibly alleged that Defendants conspired to defraud
24  MidFirst by filing false and misleading loan applications, which allowed

25

26  [90]    *See generally* Complaint.

27  [91]    *See generally id.*

28  [92]    *See generally id.*

-18-

Defendants to procure more than $3 million from MidFirst, thereby causing harm to MidFirst's business.[93]  That conduct constitutes a RICO violation.

Finally, MidFirst has stated a claim for breach of contract.  Under California law, "[t]he elements of a cause of action for breach of contract include the existence of a contract, the plaintiff's performance or excuse for nonperformance, the defendant's breach, and resulting damages to the plaintiff." *J.B.B. Inv. Partners Ltd. v. Fair*, 37 Cal. App. 5th 1, 9, *as modified* (July 1, 2019).  "The first element—the existence of a contract . . . requires parties capable of contracting, their consent, a lawful object, and a sufficient cause or consideration." *Id.*  "When a contract is reduced to writing," as it is in this case, "the intention of the parties is to be ascertained from the writing alone, if possible." Cal. Civ. Code § 1639.  "The language of a contract is to govern its interpretation, if the language is clear and explicit, and does not involve an absurdity." Cal. Civ. Code § 1638.  "Interpretation of a contract is solely a question of law unless the interpretation turns upon the credibility of extrinsic evidence." *Badie v. Bank of Am.*, 67 Cal. App. 4th 779, 799 (1998).

MidFirst has plausibly alleged that valid, written contracts—10 pairs of promissory notes, commercial security agreements, and commercial guaranties—existed and that MidFirst is entitled to enforce those agreements.[94]

Accordingly, the second and third *Eitel* factors favor MidFirst.

### c.   Sum of Money at Stake in the Action

With respect to the fourth *Eitel* factor, "[d]efault judgment is disfavored where the sum of money at stake is too large or unreasonable in relation to defendant's conduct." *Vogel v. Rite Aid Corp.*, 992 F. Supp. 2d 998, 1012 (C.D.

---

[93]   Complaint ¶¶ 103–108.

[94]   *See* Complaint, Exs. 1–30 (the "Contracts") [ECF No. 1-1].

Cal. 2014). Here, MidFirst requests a total of $10,362,178.77.[95] That sum
consists of contractual damages of $3,454,059.59, which MidFirst trebles
pursuant to 18 U.S.C. § 1964(c).[96] In view of the value of the contracts and the
conduct alleged, the Court concludes that the sum of money at stake in this
action does not weigh against entering default judgment.

### d.    Possibility of a Dispute Concerning Material Facts

The fifth *Eitel* factor "considers the possibility that material facts are
disputed." *Vogel*, 992 F. Supp. 2d at 1012. Upon the entry of default, all well-
pleaded factual allegations are deemed true—except those pertaining to
damages. *See TeleVideo Systems Inc. v. Heidenthal*, 826 F.2d 915, 917 (9th Cir.
1987); *Elektra Entm't Group Inc. v. Crawford*, 226 F.R.D. 388, 393 (C.D. Cal.
2005) ("Because all allegations in a well-pleaded complaint are taken as true
after the court clerk enters default judgment, there is no likelihood that any
genuine issue of material fact exists."). Because Defendants failed to defend
this action, it is unlikely that disputes regarding material facts will arise. *See id.*
Accordingly, this factor favors default judgment.

### e.    Whether the Default Was Due to Excusable Neglect

The sixth factor addresses whether default was due to excusable neglect.
Here, putting aside Oh, Zebra Commerce, and Yi, who have moved to set aside
the defaults entered against them,[97] four corporate Defendants—Retrievo,
Medical Benefits, Insuk, and Vitapro—never appeared in this action despite
being properly served. Four other individual Defendants—Hong, Jeong, Eom,
and Lee—did not appear in this action until after the Clerk entered default
against them, and those Defendants did not move to set aside the entry of

---

[95]    Application 7:3–14.

[96]    *See id.*

[97]    *See* Oh Motion; Yi Motion.

default despite this Court's order that they do so.  The remaining four individual

Defendants—Kim, Park, Jang, and Yun—appeared prior to the entry of default,

but the Court struck their pleadings and instructed those Defendants to file new

responses to the Complaint.  Despite the Court's orders, those Defendants did

not file new responses nor attempt to continue to participate in this action.

Thus, this factor favors the entry of default judgment.  *See, e.g.*, *Globe Ent. &*

*Media, Corp. v. Glob. Images USA*, 2022 WL 2703845 (C.D. Cal. July 11, 2022);

*Tesoro Ref. & Mktg. Co. LLC v. Petroleum One, Inc.*, 2014 WL 814018 (C.D. Cal.

Mar. 3, 2014).

>           **f.       Strong Policy Favoring Decisions on the Merits**

Finally, although "[c]ases should be decided upon their merits whenever

reasonably possible," *Eitel*, 782 F.2d at 1472, default judgment may be entered

when a defendant fails to defend an action.  *See, e.g.*, *PepsiCo*, 238 F. Supp. 2d at

1177.  This factor does not preclude the entry of default judgment.

In sum, six of the seven the *Eitel* factors weigh in favor of default

judgment, and the last is neutral.  Because the majority of the factors weigh in

favor of default judgment, MidFirst's Application is **GRANTED**.

>     **3.      Requested Relief**

>           **a.      Damages**

MidFirst requests contractual damages of $3,454,059.59, calculated as

follows:[98]

| Defendant | Principal | Interest | Total |
|---|---|---|---|
| Kim | $392,009.73 | $53,802.54 | $455,812.27 |
| Hong/Retrievo | $399,311.06 | $61,579.81 | $460,890.87 |
| Jeong/Medical Benefits | $253,210.83 | $36,971.57 | $290,182.40 |
| Park | $391,671.50 | $55,653.14 | $447,324.64 |

---

[98]       Application 6:5-16.

| Defendant | Principal | Interest | Total |
|---|---|---|---|
| Eom/Insuk | $270,888.24 | $39,084.27 | $309,972.51 |
| Jang | $399,739.51 | $61,514.52 | $461,254.03 |
| Lee/Vitapro | $341,047.97 | $50,505.69 | $391,553.66 |
| Yun | $383,135.07 | $55,946.14 | $439,081.21 |
| Oh/Zebra Commerce | $185,183.51 | $22,804.49 | $207,988.00 |
| Sum: | $3,016,197.42 | $437,862.17 | **$3,454,059.59** |

MidFirst also asks the Court to treble those damages or to award punitive damages, either of which would result in a total of $10,362,178.77, and to find that Defendants are jointly and severally liable for the damages award.[99]

With the exceptions of Oh and Zebra Commerce, MidFirst has provided evidence that each Defendant breached its contract with MidFirst and that those breaches resulted in contractual damages equal to or greater than those that MidFirst now requests.[100] MidFirst is thus entitled to $3,246,071.59 in contractual damages, which represents the total amount of contractual damages less the portion of those damages that are attributable to Oh and Zebra Commerce (*i.e.*, $3,454,059.59 - $207,988.00). Additionally, because MidFirst has established that Defendants committed RICO violations, MidFirst may receive treble damages. *See* 18 U.S.C. § 1964(c). Therefore, the Court concludes that MidFirst is entitled to total damages in the amount of $9,738,214.77 (*i.e.*, $3,246,071.59 x 3). And, because MidFirst has established that Defendants conspired to violate RICO, the Court concludes that Defendants are jointly and severally liable for those damages. *See Oki*

---

[99]    *Id*. at 7:3–6.

[100]    *See* Decl. of Chad Berry in Supp. of the Application [ECF No. 75-2] ¶ 9; *see also* Contracts.

-22-

1  *Semiconductor Co. v. Wells Fargo Bank, Nat. Ass'n*, 298 F.3d 768, 775 (9th Cir.
2  2002) (holding that imposing joint-and-several liability was appropriate in a case
3  involving a conspiracy to violate RICO).

4              **b.    Attorneys' Fees**

5         Pursuant to 18 U.S.C. § 1964(c), MidFirst may recover reasonable
6  attorneys' fees.  A "'reasonable' fee is a fee that is sufficient to induce a capable
7  attorney to undertake the representation of a meritorious civil rights case."
8  *Vogel v. Harbor Plaza Ctr., LLC.*, 893 F.3d 1152, 1158 (9th Cir. 2018) (citation
9  omitted).  A district court determines a reasonable fee in two steps:  the court
10  first applies the lodestar method, after which the court may adjust the figure
11  upward or downward based upon a variety of factors.  *See Bravo v. City of Santa
12  Maria*, 810 F.3d 659, 665-66 (9th Cir. 2016).

13         In conducting the lodestar calculation, the court must first determine
14  whether the attorneys' and staff's hourly rates are reasonable.  The court must
15  use reasonable hourly rates of lawyers in the community in which the district
16  court sits.  *See Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 979 (9th Cir.
17  2008).  The party seeking to establish that certain hourly rates are reasonable
18  may do so by submitting affidavits of counsel and affidavits of other counsel in
19  the relevant community and by providing examples from past cases of the
20  relevant community rate.  *See id.* at 980-81.

21         Finally, a "district court has wide latitude in determining the number of
22  hours that were reasonably expended."  *Sorenson v. Mink*, 239 F.3d 1140, 1146
23  (9th Cir. 2001).  The district court's order awarding attorney's fees will be
24  upheld unless the court "applied the wrong legal standard or its findings were
25  illogical, implausible or without support in the record."  *Gonzalez v. City of
26  Maywood*, 729 F.3d 1196, 1202 (9th Cir. 2013) (citing *TrafficSchool.com, Inc. v.
27  Edriver Inc.*, 653 F.3d 820, 832 (9th Cir. 2011)).  The court should compensate
28  the prevailing party only for hours that would reasonably be billed to a private

1   client.  *See Gonzalez*, 729 F.3d at 1203.  The court should exclude time entries

2   that are "[e]xcessive, redundant, or otherwise unnecessary."  *Id.* (quoting

3   *McCown v. City of Fontana*, 565 F.3d 1097, 1102 (9th Cir. 2008)).

4         MidFirst asserts that it is entitled to reasonable attorneys' fees of

5   $90,530, calculated at an hourly rate of $550.[101]  In support of that request,

6   MidFirst has provided a declaration from its lawyer, Daniel M. Hayes, and an

7   itemized billing statement.[102]  The Court concludes that the hourly rates and

8   hours expended are reasonable in view of Hayes's experience, the tasks

9   performed throughout the course of this litigation, and the complexity of this

10  matter.  Accordingly, the Court awards MidFirst $90,530 in attorneys' fees.  *See*

11  *MILOedu, Inc. v. James*, 22 WL 3648565, at *1 (N.D. Cal. Aug. 24, 2022)

12  (finding it reasonable for Hayes to charge $775 per hour).

13              **c.      Costs**

14        MidFirst seeks an award of costs totaling $7,060.03.[103]  Under L.R. 54-1,

15  the prevailing party is entitled to costs pursuant to Rule 54(d).  Accordingly, the

16  Court awards MidFirst $7,060.03 in costs.

17              **IV.  DISPOSITION**

18        For the foregoing reasons, the Court hereby **ORDERS** as follows:

19        1.      The Oh Motion [ECF No. 80] is **GRANTED**.  The defaults

20  entered against Byungik David Oh and Zebra Commerce Inc. on December 18,

21  2023, are **SET ASIDE**.

22

23

24

25  ───────────────────
    [101]    Application 7:10; Decl. of Daniel M. Hayes in Supp. of the Application
26  (the "Hayes Declaration") [ECF No. 75-1] ¶ 5.

27  [102]    *See* Hayes Declaration; *id.*, Ex. A.

28  [103]    Application 7:10.

2.      Byungik David Oh and Zebra Commerce Inc. are **DIRECTED** to file their respective responses to the Complaint no later than November 14, 2025.

3.      The Yi Motion [ECF No. 86] is **GRANTED**.  The default entered against Yeon Yi aka Yuna Lee is **SET ASIDE**.

4.      Yi is **DIRECTED** to file a response to the Complaint no later than November 14, 2025.

5.      MidFirst's instant Application [ECF No. 75] is **GRANTED in part**.

6.      Judgment shall be entered in **FAVOR** of MidFirst, and **AGAINST** Defendants Sun Joo Kim; Retrievo, Inc.; Edward Hong; Medical Benefits Inc.; Kiyong Jeong; Kris Park; Insuk Worldwide Corp.; Tae Myung Eom; Woo Young Jang; Vitapro, Inc.; Hyejin Lee; and Sun Ok Yun, jointly and severally, in the amount of $9,835,804.80, which consists of $9,738,214.77 in damages, $90,530 in attorneys' fees, and $7,060.03 in costs.

**IT IS SO ORDERED.**

Dated:   October 31, 2025

John W. Holcomb
UNITED STATES DISTRICT JUDGE